OPINION
James H. Perkins is appealing from the grant of summary judgment by the trial court in favor of defendant-appellee Stapleton Buick-GMC Truck, Inc. (hereinafter Stapleton). The following statement of facts is taken from Perkins' brief on appeal, which Stapleton adopted in its brief, except for the service invoices referred to in Perkins' statement of facts and attached to his brief, as follows:
 On June 25, 1996, Plaintiff-Appellant leased a new 1996 GMC Sierra K 2500 pickup truck from Defendant-Appellee for a 60-month term. (Lease Agreement). During the first two years of the lease, this vehicle was serviced by Appellee's shop on 13 separate occasions. (Service Invoices appended hereto). The total downtime of the vehicle while in the repair shop was approximately 78 days. (Service Invoices appended hereto).
 A total of 25 separate repairs were made (four problems were reoccurring and purportedly "repaired" by Appellee on more than one occasion). (Service Invoices appended hereto). These repeat problems were not trivial. They included malfunctions with the front and rear axles, engine, and the air conditioner. (Ser. Inv. 27916, 30615, 33346, 33680, 34435, 35119, 36534 appended hereto).
 Three days after Appellant took possession of the vehicle, it had to taken [sic] into the shop because the air conditioner was inoperable. (Serv. Inv. 27916 appended hereto). Two and a half months later (on September 16, 1996), the vehicle was brought in for additional work. (Ser. Inv. 28958 appended hereto). On January 8, 1997, Appellant dropped the vehicle off complaining of rear-end noise. (Ser. Inv. 30615 appended hereto). Appellee proceeded to "repair" the vehicle by replacing the axle bearings and pinion seal, and finally after 24 days in the shop, the vehicle was returned to Appellant. (Ser. Inv. 30615 appended hereto). Three months later, the vehicle was again purportedly repaired by Appellee; this time the shop replaced the front differential assembly to "cure" the axle problem. (Ser. Inv. 33346 appended hereto). The vehicle was returned four days later with a written service statement that it was repaired. (Ser. Inv. 33346 appended hereto). On April 30, 1997, the vehicle was taken into the shop due to unusual engine vibration and noise. (Ser. Inv. 33680 appended hereto). This time, the rear differential assembly was replaced to attempt to fix the noise and the drive shaft was balanced to remedy the vibration. (Ser. Inv. 33680 appended hereto). Thirty-seven days later, in June, the car was returned to Appellant, accompanied by another statement declaring that the vehicle was fixed. (Ser. Inv. 33680 appended hereto). Again later that same month, the vehicle was once more taken in for unusual noise. (Ser.
Inv. 34435 appended hereto). In August 1997, the vehicle was again serviced for excessive noise. (Ser. Inv. 35119 appended hereto). This time, Appellee replaced all the lifters, trying to fix the noise and nine days later the "fixed" vehicle was returned. (Ser. Inv. 35119 appended hereto). On December 16, 1997, there were yet more problems with the axle and the vehicle was in the shop for three more days. (Ser. Inv. 36534 appended hereto). Again on May 4, 1998, the vehicle was taken once again in for unusual noise, this time the truck was returned with a statement that it was in "normal condition at this time." (Ser. Inv. 38190 appended hereto). Later in July, Appellee made further repairs to the air conditioner. (Ser. Inv. 39125 appended hereto).
After each service, Appellee's written service statements noted what work had been done. (Ser. Inv. appended hereto). Each time the vehicle was returned to Appellant, Appellee represented that the work had been successfully completed. (Ser. Inv. appended hereto). Despite these representations, the vehicle was taken back several times for the same problems. And each time, Appellant was advised the job was done when he was given his vehicle back.
The wording on the reverse side of the service invoices led Appellant to believe that "top-notch mechanics" were working on his vehicle. The statements read:
 "Here's What Goes Into the Cost of Servicing your Automobile. Good service doesn't "just Happen"! Operating a dependable service business requires organization, competent management, and a substantial capital investment. So don't judge service charges solely by the time spent repairing your car. When that top-notch mechanic goes to work, many costs have been incurred just to get him there ready to do the job . . ." (Ser. Inv. 33346, 33680, 34435, 35119, 36534, 38190, 39125 appended hereto).,
Appellant relied on this statement and put his trust in Appellee's "top-notch mechanics" to repair his vehicle. He took his vehicle into Appellee's shop on 13 separate occasions. (Ser. Inv. appended hereto). Appellant believed that the "top-notch mechanics" would fix the vehicle on the first try, but he was wrong. The "top-notch mechanics" were given several opportunities to fix problems such as the axles, but were unable to do so. They attempted to fix the problems several times and each time they led Appellant to believe the problems were fixed. But they were not. Appellee's "top-notch mechanics" failed on several occasions and Appellant relied to his detriment on these representations made by the mechanics and the statements.
Both parties filed motions for summary judgment. The trial court denied Perkins' motion, but granted Stapleton's motion with the following entry:
 The Ohio Supreme Court has stated that the moving party on a motion for summary judgment bears the initial burden "demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." Drecher [sic] v. Burt, 75 Ohio St.3d 280 (1996). The burden then shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial and if the non-movant does not respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id. at 293; Civ.R. 56(E).,
Plaintiff asserts that the Defendant breached the express and implied warranties allegedly made to Plaintiff. The lease agreement that the Plaintiff signed states that the Defendant makes no warranties including implied warranties of merchantability or fitness on the vehicle. Exclusion of express or implied warranties in lease agreements are permitted as long as the language 1) mentions "merchantability," 2) is in writing and 3) is conspicuous. O.R.C. § 1310.21(A) and (C).
The first two requirements of O.R.C. § 1310.21 are satisfied, the language of the lease mentions merchantability and is in writing. Pursuant to O.R.C. 1310.01(J), it is the decision of the court as to whether the language is conspicuous. "Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color." Id. The pertinent language of the lease agreement which states there are no express or implied warranties is in bold face and all capitals. This print is larger and in contrast to the rest of the lease agreement, thus it is conspicuous. Therefore, the last statutory requirement is satisfied and there were no express or implied warranties made by the Defendant to the Plaintiff regarding the vehicle., Plaintiff asserts that the Defendant violated O.R.C. § 1345.02(B)(1) and (5) and 1345.03(B)(2), (3) and (6).
Plaintiff alleges that since the vehicle was brought to the Defendant for repairs and that the Defendant made representations that it could make the repairs and then represented that the vehicle had been properly repaired, but the Defendant was unable to find and fix the problem, O.R.C. §§ 1345.02 and 1345.03 were violated.
The Court finds that the Plaintiff has failed to demonstrate an act on the part of the Defendant which would raise an issue of material fact that the Defendant had violated Ohio's Consumer Sales Practices Act as cited by the Plaintiff.
The Court, having considered the pleadings, affidavits, all relevant evidence provided, and the written arguments of counsel, finds that there are no genuine issues as to material facts.
The Defendant, being entitled to a judgment granting the relief prayed for as a matter of law, it is hereby ORDERED that the Defendant's motion for summary judgment be GRANTED.
IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment be DENIED.
On appeal, Perkins brings us one assignment of error, but separates it into three parts or as he states, branches, as follows:
ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE
BRANCH ONE
 The disclaimer of warranties in the lease agreement is irrelevant or unconscionable.
BRANCH TWO
 The subsequent representations made by appellee created both express and implied warranties.
BRANCH THREE
 The appellee's repeated failure to repair the vehicle constitutes a pattern of inefficiency and incompetence.
As we address the assigned error, we are mindful that an appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Whether summary judgment is appropriate hinges upon the movant's demonstration (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74; Civ.R. 56(C). In addition, the burdens placed upon both the movant and non-movant in a motion for summary judgment are as follows:
 [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the non-movant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The court had previously held that "[a] motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production." Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus. In Dresher, however, the court expressed a belief that its holding in Wing was too broad. Thus, after Dresher, a nonmovant is required to produce evidence only on those issues upon which the movant has sustained his or her initial burden as explained above. It is with these principles in mind that we approach the merits of Perkins' three assignments of error.
In "branch three" of his assignment of error, Perkins argues that Stapleton's repeated failure to repair the vehicle constitutes a pattern of inefficiency and incompetence that constitutes a violation of the Ohio Consumer Sales Practices Act, R.C. 1345. We agree. In Pierson v. Tom Harrigan Oldsmobile-Nissan, Inc., (Sept. 16, 1991), Montgomery App. No. 12411, unreported, this court held that a pattern of inefficiency and incompetency in repairing a car can be a violation of the Consumer Sales Practices Act, specifically R.C. 1345.03(A), citing Brown v. Lyons (1974), 43 Ohio Misc. 14, 25, 72 O.Ops2d 216, 220.
 A supplier in connection with a consumer transaction who consistently maintains a pattern of inefficiency, incompetency, OR continually stalls and evades his legal obligations to consumers, commits an unconscionable act and practice in violation of the Ohio Consumer Sales Practices Act, R.C. 1345.03(A), providing an adequate legal basis for the award to the consumer of punitive damages in an action where such damages have been requested from the court. Id., emphasis supplied.
Stapleton's response in its brief is that there is no evidence of continually stalling in this case. But, as we pointed out by our emphasis above, inefficiency and incompetency are disjunctive from continually stalling.
In "branch two" of his assignment of error, Perkins maintains and is supported by affidavits in the record that Stapleton continually represented to him that repairs had been made and the problem fixed, when in fact, no such thing had occurred. Stapleton presented an affidavit of the owner and one of the employees that such no such representations had been made to Perkins. Stapleton's affidavit is part hearsay, but in any case, we have a clear conflict of evidence on a genuine, material fact, thus preventing the grant of summary judgment.
We find the disclaimer of warranties and lease agreement irrelevant, and the argument is moot.
The judgment is reversed, and the case is remanded for further proceedings.
 ______________________ FREDERICK N. YOUNG, J.
BROGAN, J. and GRADY, J., concur.